

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AFM:GMR  *271 Cadman Plaza East*
F. #2023R00263  *Brooklyn, New York 11201*

December 3, 2025

By ECF

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Jorel Fowler
              Criminal Docket No. 23-215 (NRM)

Dear Judge Morrison:

       The government respectfully submits this letter in advance of sentencing in this matter, which is currently scheduled for December 17, 2025 at 11:00 a.m. On June 9, 2025, the defendant pleaded guilty before Your Honor, pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), to coercion and enticement, in violation of 18 U.S.C. § 2422(b), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2). The plea agreement permits the parties to advocate for a sentence of imprisonment within the range of 288 months to 360 months to be followed by five years of supervised release. For the reasons discussed herein, the government respectfully submits that 360 months' imprisonment and five years of supervised release is appropriate in this case.

I.    Background

       A.    Offense Conduct

       The pre-sentence investigation report ("PSR") accurately sets forth the offense conduct.[1] Between at least December 2022 through April 2023, the defendant, who was 32 years old, communicated over the internet with multiple children—sometimes posing as a child himself—and solicited sexually explicit videos and images from them. PSR ¶¶ 7-14. The children responded by sending the defendant sexually explicit images and video, including material which shows the children masturbating and posing in positions requested by the

---

[1] The defendant filed objections to the PSR. Def. PSR Objs., ECF No. 40. His objections challenge only factual material related to his personal background and not the offense conduct contained in the PSR. The government takes no position on these objections.

defendant. *Id.* At the time, the defendant was a registered sex offender in New York following a conviction for use of a child less than 17 years of age in a sexual performance, in violation of New York Penal Law § 263.05. *Id.* ¶ 15.

A warranted search of the defendant's Snapchat account showed that in approximately December 2022, the defendant exchanged messages with a 15-year-old girl ("Jane Doe 1"). PSR ¶ 11. In those messages, the defendant requested sexually explicit images and coached Jane Doe 1 regarding what types of material she should send to him. *Id.* He requested that she pose in different positions before recording images of herself to send to him. *Id.* The following are some of the many messages sent by the defendant to Jane Doe 1 during their conversation:

"I wanna see your ass too"

"Show me your pants off"

"Now take off your shirt please"

"Soo keep that pose your (sic) in but use your first two fingers to open it like a V"

"And have the phone in between your legs"

"Ok not bad but ima (sic) teach you how to do a better picture of your pussy"

Jane Doe 1 sent the defendant approximately four videos. *Id.* One video showed Jane Doe 1 inserting her finger into her vagina. *Id.* Another video showed Jane Doe 1 rubbing her vagina with her hand. *Id.* The context of the conversation suggested that the defendant had sent Jane Doe 1 a picture of his penis. *Id.*

In approximately January 2023 through February 2023, the defendant communicated through Snapchat with a 12-year-old girl ("Jane Doe 2") residing in Virginia and requested that she send him sexually explicit images of herself. PSR ¶ 7. Jane Doe 2 first met the defendant, who represented himself to be a 15-year-old boy, while playing the internet-based game Roblox. *Id.* ¶ 8. The defendant instructed Jane Doe 2 to add him as a contact on Snapchat. *Id.* He then asked Jane Doe 2 to send him nude pictures of herself and she complied. *Id.* When Jane Doe 2 asked the defendant to send her a picture of his face, he complied but responded that she "owed him" more pictures. *Id.* She complied and sent more images. *Id.*

Jane Doe 2's parents discovered that she had been sending nude images of herself to the defendant and contacted local law enforcement in Fairfax County, Virginia. PSR ¶ 8. The local police examined the iPad used by Jane Doe 2 to communicate with the defendant. *Id.* ¶ 9. During this examination, the police found the pictures of the defendant's face that he had sent to Jane Doe 2 and images of Jane Doe 2 in which she was exposing her nude breasts. *Id.*

On April 26, 2023, the defendant was arrested by the Federal Bureau of Investigation at his residence in Queens, New York. *Id.* ¶ 12. The FBI also executed a search

warrant at the residence in conjunction with the defendant's arrest. *Id.* The defendant did not immediately answer the door when FBI agents sought entry, and once agents entered the defendant was observed trying to delete data from a phone. *Id.* The agents seized multiple electronic devices from the defendant's residence, including two cellular phones. *Id.* The defendant later admitted to agents that he had been trying to delete material from his phone when the agents entered and further acknowledged communicating with children on the internet. *Id.*

A search of the defendant's electronic devices revealed additional sexually explicit communications with minors, including a 14-year-old girl ("Jane Doe 3"). *Id.* ¶ 13. In approximately April 2023, the defendant exchanged messages with Jane Doe 3 in which he requested sexually explicit images and videos and coached Jane Doe 3 regarding what types of material to send. *Id.* The following are some of the messages sent by the defendant to Jane Doe 3 during their conversation:

> "To prove your (sic) serious send me a pic of your tummy please and we'll go from there"

> "So I would like to do a pic session with you. I request a pic, you take it, check if it's good and move to the next one. At the end I'll give you 20 zems worth of stuff. Btw you will be naked at the end of this"

> "Now panties. Take the sweats off please. Front and back."

> "Now sit on your bed. I want a good look at your pussy."

> "I want you to turn around bend over and spread you (sic) butt with your hands. Gonna (sic) have to be a vid."

Jane Doe 3 complied with the defendant's requests and sent him sexually explicit images of herself posing as he had requested. *Id.* These materials included images showing Jane Doe 3's vagina being penetrated by her fingers. *Id.* As referenced above, during their conversation, the defendant promised to send Jane Doe 3 a quantity of "zems," a type of digital currency in the online video game Zepeto, in exchange for sexually explicit images of herself. The defendant also asked Jane Doe 3 to use a massage wand in a sexually explicit manner. Electronic data in the defendant's phone shows that he spoke with Jane Doe 3 up until April 25, 2023, only one day before his arrest and the seizure of several of his electronic devices.

A forensic review of the defendant's electronic devices identified 28 videos and 492 images containing child sexual abuse material ("CSAM"). *Id.* The devices also contained approximately 697 sexually explicit images of girls categorized as "age difficult," meaning the ages of the girls depicted was difficult to determine. *Id.* Searches of the defendant's Snapchat account and electronic devices show that his conduct was not limited to the victims identified in

3

the indictment and information filed in this case. Rather, he was communicating with many minors and requesting that they send sexually explicit material.

B. Procedural History

On April 26, 2023, the defendant was arrested and charged by complaint with sexual exploitation of children, in violation of 18 U.S.C. § 2251. Complaint, ECF No. 1. On May 16, 2023, the grand jury returned an indictment charging the defendant with three counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251 (counts one through three) and one count of offense by a registered sex offender, in violation of 18 U.S.C. § 2260A. Indictment, ECF No. 12

On June 9, 2025, the defendant pleaded guilty to a two-count superseding information, charging coercion and enticement, in violation of 18 U.S.C. § 2422(b) (Count One), and receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count Two). Superseding Information, ECF No. 30. The defendant's plea was entered pursuant to a plea agreement under Rule 11(c)(1)(C) in which the parties agreed that a sentence of between 288 months and 360 months imprisonment was the appropriate sentence on both Count One and Count Two.[2]

II. The Guidelines Calculation

The United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") Calculation, as set forth in the PSR, is as follows:

Count 1[3]

Count 1(a) – Coercion and Enticement (18 U.S.C. 2422(b) – Jane Doe 1)

Base Offense Level (U.S.S.G. §§ 2G1.3(c)(1), 2G2.1(a)[4])                                   32

---

[2]     Had the defendant proceeded to trial and been convicted of one count of sexual exploitation of children, in violation of 18 U.S.C. § 2251, and offense by a registered sex offender, in violation of 18 U.S.C. § 2260A, he would have faced a mandatory minimum of 45 years in prison. *See* 18 U.S.C. § 2251(e) (providing a mandatory minimum of 35 years in prison for an offender convicted of sexual exploitation of children following two or more convictions for an offense related to the sexual exploitation of children); 18 U.S.C. 2260A (providing a mandatory consecutive 10-year term of imprisonment for sex offenders convicted, in pertinent part, of violating 18 U.S.C. § 2251).

[3]     Under U.S.S.G. § 2G1.3(d)(1), when calculating the applicable sentencing range, chapter three, Part D (multiple counts), is applied as if the conduct regarding each victim had been charged in a separate count of the indictment.

[4]     The applicable Guideline for a violation of 18 U.S.C. § 2422(b) is U.S.S.G. § 2G1.3. However, the cross reference at § 2G1.3(c)(1) is applicable because the defendant's

| | | |
|---|---|---:|
| Plus: | Conduct Involved Minor Between 12 and 16 years old (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| Plus: | Commission of a Sexual Act (U.S.S.G. § 2G2.1(b)(2)(A)) | +2 |
| Plus: | Use of a Computer (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| Adjusted Offense Level: | | <u>38</u> |

<u>Count 1(b) – Coercion and Enticement (18 U.S.C. 2422(b) – Jane Doe 2)</u>

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2G1.3) | | 28 |
| Plus: | Knowing Misrepresentation of the Defendant's Identity (U.S.S.G. § 2G1.3(b)(2)(A)) | +2 |
| Adjusted Offense Level: | | <u>30</u> |

<u>Count 1(c) – Coercion and Enticement (18 U.S.C. 2422(b) – Jane Doe 2)</u>

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §§ 2G1.3(c)(1) 2G2.1(a)) | | 32 |
| Plus: | Conduct Involved Minor Between 12 and 16 years old (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| Plus: | Commission of a Sexual Act (U.S.S.G. § 2G2.1(b)(2)(A)) | +2 |
| Plus: | Use of a Computer (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| Adjusted Offense Level: | | <u>38</u> |

<u>Count 2</u>

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. § 2G2.2(a)(2)) | | 22 |
| Less: | Conduct Limited to Receipt or Solicitation of CSAM (U.S.S.G. § 2G2.2(b)(1)) | -2 |
| Plus: | Pattern of Exploitation of a Minor (U.S.S.G. § 2G2.2(b)(5)) | +5 |
| Plus: | Use of a Computer (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| Plus: | Possession of 600 or More CSAM Images | +5 |

---

conduct involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. PSR ¶ 23.

Adjusted Offense Level: <u>32</u>

Grouping Analysis (U.S.S.G. § 3D1.4)

| Group/Count | Adjusted Offense Level | Units |
|---|---|---|
| Count 1(a) | 38 | 1.0 |
| Count 1(b) | 30 | 0.5 |
| Count 1(c) | 38 | 1.0 |
| Count 2 | 32 | 0.5 |
| Total Units: | | <u>3.0</u> |
| Greatest Adjusted Offense Level | | 38 |
| Plus: Total Units | | +3 |
| Less: Acceptance of Responsibility | | -3 |
| Total Offense Level: | | <u>38</u> |

PSR ¶¶ 20-61. Under U.S.S.G. § 4B1.5(a), the defendant is a repeat and dangerous sex offender against minors and his criminal history category is V. *Id.* ¶ 68. Based on a total offense level of 38 and a criminal history category of V, the applicable Guidelines range for the defendant is 360 months to life. *Id.* ¶ 105. The government respectfully submits that the Guidelines calculation set forth in the PSR is accurate and should be adopted by the Court.

III. Legal Standard

As the Court is aware, the Sentencing Guidelines are advisory and not mandatory. *See United States v. Booker*, 543 U.S. 220, 246 (2005). However, the District Court "must consult those Guidelines and take them into account when sentencing." *Id.* at 264. As the Supreme Court has instructed, courts must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range…[and] the Guidelines range should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court must also consider the factors specified in 18 U.S.C. § 3553(a) and explain its chosen sentence, including any deviation from the Guidelines range. *United States v. Bonilla*, 618 F.3d 102, 109 (2d Cir. 2010). A sentence should be based on the individual facts of a case and if the Court decides that a sentence outside the Guidelines range is appropriate, the Court must "ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

Although no longer mandatory, the Sentencing Guidelines are an important tool toward achieving the objective of "similar sentences for those who have committed similar crimes in similar ways." *Booker*, 543 U.S. at 252. For that reason, "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). Adherence to the Guidelines helps avoid "unwarranted disparities between defendants convicted of similar conduct and with similar criminal backgrounds." *United States v. Elfgeeh*, 515 F.3d 100, 139 (2d Cir. 2008).

After determining the applicable Guidelines range, the Court must turn to the factors set forth in Title 18, United States Code, Section 3553 and "impose a sentence sufficient but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). These considerations include the need for the sentence:

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). *See also Booker*, 543 U.S. at 260. In addition to these factors, the Court must also consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statements from the United States Sentencing Commission; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a).

In the context of a guilty plea pursuant to Rule 11(c)(1)(C), the parties' "recommendation or request binds the court once the court accepts the plea agreement." Fed. R. Crim. P. 11(c)(1)(C). Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure provides that, if presented with a plea agreement pursuant to Rule 11(c)(1)(C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Section 6B1.2(c) of the Guidelines sets forth the standard for acceptance of a Rule 11(c)(1)(C) plea agreement. As relevant here, Section 6B1.2(c) provides that "the court may accept the agreement if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2)(A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form." Whether to accept a plea agreement rests within the Court's discretion. See United States v. Severino, 800 F.2d 42, 45 (2d Cir. 1986); United States v. Torres-Echavarria, 129 F.3d 692, 696 (2d Cir. 1997). However, "[d]eference ought to be paid to sentencing bargains because prosecutors are in the best position to make decisions about what sentence to pursue in plea negotiations." United States v. Espar, Inc., 15-CR-28 (JG), 2015 U.S. Dist. LEXIS 30469, at *2 (E.D.N.Y. Mar. 10, 2015).

IV.     A Term of Imprisonment of 360 Months is Appropriate

The Court should accept the parties' Rule 11(c)(1)(C) plea agreement and impose a sentence of 360 months imprisonment and five years of supervised release.[5] The sentencing range in the parties' agreement, 288 to 360 months, is below the advisory Guidelines range of 360 to life. The government respectfully submits that the proposed range appropriately balances the seriousness of the defendant's conduct and the need to ensure that the defendant does not engage in further criminal conduct against the benefits of a negotiated resolution. It permits careful allocation of prosecutorial and other governmental resources, which would otherwise be devoted to extensive pretrial, trial, post-trial, and appellate litigation. Further, the parties' agreement, which still permits each party to argue for what it believes to be an appropriate sentence within the specified range, has the additional benefit of sparing the minor victims in this case from preparing for trial, testifying in the defendant's presence in open court, and exposing themselves to potential revictimization. It further obviates the need to publish even a limited number of sexually explicit images of the minor victims to the jury.

A.      The Court Should Reject the Defendant's Attempts to Minimize His Conduct

In asking the Court to impose the minimum sentence of 24 years, the defendant improperly minimizes his conduct. Contrary to the defendant's descriptions, his conduct was not a "slip[] up" and this is far from a "run of the mill case." *See* Def. Sent. Memo 1, 11, ECF No. 39. Instead, as discussed in more detail below, the defendant's predatory behavior directed at the most vulnerable members of society is the latest episode of conduct spanning a large portion of the defendant's adult life.

Rather than genuine expressions of remorse, the defendant's sentencing submission directs blame at others. It smacks of efforts to explain away or contextualize the defendant's actions. However, by any measure, his behavior was obviously wrong and abhorrent. No set of circumstances or course of events could justify the victimization and objectification of young children. Here, the defendant victimized at least three children during separate episodes of criminality. Despite the unequivocal wrongfulness of his conduct, he points to different factors which he suggests contributed to his behavior. These include a probation officer who did not track his electronic devices or monitor them regularly, the lingering effects of the COVID-19 pandemic, a sex offender registration system which made his life difficult and lonely, and the internet which made it too easy to victimize others. *See* Def. Sent. Memo 7, 12, 13. None of these circumstances are responsible for the defendant's conduct. It was the defendant who made the decision to speak with his victims on the internet, to groom them, and to direct them to send him sexually explicit photographs of themselves. He alone is responsible. Regardless of how the defendant tries to minimize his conduct, the fact remains that he was given a second chance by society and almost immediately squandered it.

---

[5]     At the time of the defendant's plea, the Court stated that it accepted his "plea of guilty to Count One and Count Two of the superseding information." Plea Hearing Tr. 36:1-3 (June 9, 2025).

8

The defendant also misleadingly claims that the agreed-upon sentencing range of 288 to 360 months (24 to 30 years) is unusually long. However, the agreed-upon sentencing range permits a sentence which falls below the median sentence for offenders within the defendant's criminal history category who were sentenced under U.S.S.G. § 2G2.1, the primary guideline driving the defendant's sentencing range. According to the Judiciary Sentencing Information tool ("JSIN"), in the last five years, the average length of imprisonment for similarly situated offenders sentenced under U.S.S.G. § 2G2.1 was 335 months. *See* Judiciary Sentencing Information, U.S. SENT. COMM'N, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Dec. 3, 2025). This figure sits in the middle of the range provided in the parties' plea agreement.

Critically, the defendant's sentencing submission relies heavily on the straw-man argument that the applicable Guidelines, which call for a sentencing range of 360 months to life, are flawed. Def. Sent. Memo. 10. The defendant spills much ink attacking the application of U.S.S.G. § 2G2.2, directing the court to *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), a case in which the court of appeals was critical of the Guidelines range applicable in certain child pornography cases. Def. Sent. Memo. 10-11. However, the defendant's Guideline sentencing range in this case is driven primarily by U.S.S.G. § 2G2.1, not U.S.S.G. § 2G2.2. *See* PSR ¶¶ 20-61. In *Dorvee*, the defendant pleaded guilty to only one count of distribution of child pornography. 616 F.3d at 176. The court of appeals was critical of the application of U.S.S.G. § 2G2.2 which it explained subjected "ordinary first-time offender[s]" to sentences which "rapidly approach[ed] the statutory maximum. 616 F.3d at 186.

This case differs markedly from *Dorvee* and the court's criticism of U.S.S.G. § 2G2.2 in that case is inapplicable here for several reasons. *First*, the offenses of conviction in this case encompass the production of child pornography, not just the receipt or distribution of it. The Second Circuit has observed in several cases post-*Dorvee* the "distinction between production" and other child pornography offenses. *See United States v. Brown*, 843 F.3d 74, 83 (2d Cir. 2016) (collecting cases). The defendant repeatedly attempts to gloss over this critical distinction and blur the line between mere possession or receipt of child pornography and his conduct in this case, the active solicitation of abuse material from vulnerable children.

*Second*, in this case, the defendant interacted with not just one, but multiple child victims. He groomed them, solicited child pornography from them, and successfully obtained sexual abuse material depicting masturbation and their genitals. *See, e.g.* PSR ¶¶ 11, 13. In *Dorvee*, although the defendant distributed child pornography, the evidence showed that the people with whom Dorvee interacted were in fact undercover police officers. 616 F.3d at 176-77.

*Third*, as explained in the PSR, because the defendant in this case victimized more than one child, the Guidelines are calculated as if each victim was included in a separate count of conviction. PSR ¶ 21. As a result, in the Guidelines multicount grouping analysis, two of the four groups have an adjusted offense level of 38. The defendant's conviction under Count 2 of the information—the only count of conviction for which U.S.S.G. § 2G2.2 is the applicable guideline—adds only 0.5 units to his combined adjusted offense level. PSR ¶ 57. Therefore, although U.S.S.G. § 2G2.2 is implicated in calculating the applicable Guidelines range, it is of little consequence in this case.

9

The defendant claims that "a risk of recidivism is just that: a risk calculated by statistical probabilities." Def. Sent. Memo. at 13. In the case of this defendant, the government vehemently disagrees. The defendant was previously convicted in New York state court of almost identical conduct—grooming children over the internet and obtaining explicit images of them. PSR ¶¶ 63-64. Upon release, he reverted to the same conduct. His risk of recidivism is not a statistical probability, determinable only by relying on clinical assessments and similar tools. Instead, the defendant's past behavior is the best predictor of his future conduct when—by his own admission—he is left alone to his own worst impulses.

The risk assessment conducted by the defendant's retained psychologist is unpersuasive and does not weigh in favor of the minimum sentence. In his submission, the defendant describes a psychological evaluation and risk assessment performed by a clinical psychologist retained by the defense team. *Id.* at 14. The defendant states at first that the psychologist's risk assessment showed "*some* risk of recidivism." *Id.* at 13 (emphasis in original). However, the defendant then admits that the psychologist "concluded that Mr. Fowler presents as 'moderate-to-high-risk with regard to future sexual reoffending," a finding significantly influenced by the defendant's prior sex offense convictions and his conduct in this case. *Id.* at 14.

The defendant also directs the Court to what he describes as the "meaningful distinction, for recidivism purposes, between 'contact offenses and 'CSEM-only' offenders.' *Id.* He relies on a tortured argument, suggesting that because he historically only victimized children over the internet—rather than in person—the minimum sentence is appropriate. The government disagrees. Although there is an obvious distinction between sexual abuse involving physical contact with a victim and abuse which occurs over the internet, both are serious and have lasting impacts on the victims. Just because his risk of recidivism may relate primarily to reoffending through the internet, rather than in person, does not mean that it should be taken any less seriously. Further, the defendant's analysis fails to account for the fact that had his prior or instant crimes involved physical sexual abuse, he would be facing—and the government would be seeking—an even greater penalty than that applicable here.

Further, the cases upon which the defendant relies in support of his request for the minimum available sentence are inapt. As the Court is aware, every criminal case is unique, and an individualized assessment of each defendant is required when imposing sentence. The defendant's description of the cases he cites fail to account for noteworthy differences.

For example, the defendant directs the court to *United States v. Acosta*, 19-CR-500 (FB) (E.D.N.Y.), a case involving the possession of hundreds of thousands of images and videos depicting child sex abuse, and states that the defendant only received the five-year mandatory minimum. Def. Sent. Memo at 17. However, the defendant failed to inform the court that in *Acosta* the government agreed that a sentence below the applicable U.S.S.G. was appropriate and filed a sentencing memorandum—portions of which were sealed—explaining its rationale. *See Acosta*, 19-CR-500 (FB) (E.D.N.Y.), ECF No. 59. In addition, the *Acosta* defendant pleaded guilty only to distribution of child pornography and not to coercion and enticement or sexual exploitation of children.

In *United States v. Musarra*, 22-CR-152 (FB), the defendant was charged with both receipt of child pornography and possession of child pornography and pleaded guilty only to possession. 22-CR-152 (FB), Minute Entry (Oct. 10, 2023). Unlike in the instant case, the offense of conviction did not involve the victimization of at least three separate victims and the active solicitation and coaching of children in the production of child pornography.

The defendant also relies on *United States v. Arroyo*, 16-CR-376 (JBW), a case in which a defendant was convicted of coercion and enticement and sentenced to ten years' imprisonment. Def. Sent. Memo at 17. Eager to support his request for the minimum available sentence in the instance case, the defendant fails to provide the Court with the full rationale provided for the sentence imposed in *Arroyo*. Although in *Arroyo*, Judge Weinstein expressed his belief that the sentence imposed was "excessive," he came to that conclusion in the case of a defendant with no criminal history, who had "been diagnosed with significant emotional problems and delays in his maturation, as well as depression and anxiety," and had attempted suicide multiple times. 16-CR-376 (JBW), Statement of Reasons 2, 6, ECF No. 53. These facts are a far cry from the present case, where the defendant had two prior convictions related to the production of child pornography and none of the mitigating circumstances presented in *Arroyo*.

The defendant's reliance on *United States v. Weinreb*, 20-CR-06 (BMC), a case where a defendant sexually abused multiple minor victims, is also misplaced. There, the defendant did not have a prior criminal history and the parties' plea agreement only provided for a maximum sentence of 87 months in prison. *See Weinreb*, 20-CR-06 (BMC), ECF No. 49. By contrast, the defendant here has multiple prior convictions related to the sexual exploitation of minors and the parties' agreement contemplates a sentence of up to 30 years' imprisonment.

B. The Serious Nature of the Offense and the Need to Promote Respect for the Law

A sentence of 360 months imprisonment is necessary to reflect the seriousness of the defendant's offense. *See* 18 U.S.C. § 3553(a)(2). "[T]he exploitative use of children in the production of pornography has become a serious national problem." *Paroline v. United States*, 572 U.S. 434, 439 (2014). As the Supreme Court has said, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through . . . the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 757 (1982).

"Child pornography production offenses are extremely serious and ordinarily warrant significantly harsher punishments than possession or even distribution offenses." *United States v. Muzio*, 966 F.3d 61, 65 (2d Cir. 2020) (citing *Paroline*, 572 U.S. at 439-40). Lengthy sentences are especially appropriate where, as here, a defendant's conduct "involved manipulating many victims into repeated acts of producing child pornography." *See id.* at 64 (affirming the imposition of a 35-year sentence in a case involving the production of child pornography and multiple victims); *see also United States v. Valle*, No. 23-7024, 2024 WL 4798915, at *4 (2d Cir. Nov. 15, 2024) (affirming 360 month sentence where the defendant coerced children into producing child pornography over the internet); *United States v. Spoor*, 904

11

F.3d 141, 158 (2d Cir. 2018) (affirming 360 month sentence where the defendant was convicted of production and possession of child pornography).

As described above, over the span of several months, the defendant targeted, groomed, and sexually exploited several children. He requested child pornography from them and—using sexually explicit language—directed them in how to position their bodies and masturbate, all for his own gratification. The seriousness of this conduct cannot be understated. The Court's sentence should send a message to society that offenses of this nature will be taken seriously and punished severely. Only a sentence of appropriate gravity, as requested by the government, will properly reflect the seriousness of the defendant's conduct while promoting respect for the law.

C. The Defendant's History and Characteristics

The defendant's history and characteristics weigh heavily in favor of a sentence of 360 months imprisonment. *See* 18 U.S.C. § 3553(a)(1). The defendant is a serial sex offender who has been convicted in both state and federal court of crimes involving the sexual exploitation of children. He is not a mere consumer of child pornography. Instead, he has a documented history of manipulating children into producing abuse material.

As referenced above, in 2015, the defendant was twice convicted in New York state court of use of a child less than 17 years of age in a sexual performance, in violation of New York Penal Law § 263.05. PSR ¶¶ 63-64. In that case, beginning as early as 2013, the defendant communicated with multiple young girls over the internet and induced them to send him sexually exploitive videos of themselves. *Id.* ¶ 63. Notably, the defendant perpetrated his crime using sophisticated manipulation, creating a multilevel "game" in which he would award points to his victims for engaging in increasingly graphic sexual behavior. *Id.* His sexually exploitive behavior included persuading victims to remove their clothing, display their genitals on camera, and masturbate with their fingers and foreign objects. *Id.*

The defendant was sentenced to two concurrent terms of five to fifteen years in state prison following his convictions. PSR ¶¶ 63-64. He was paroled in March 2021, but promptly reoffended the following year by sexually exploiting young girls, including the victims in this case. *Id.*

The defendant's release from custody well before the maximum allowable sentence in his state case was a second chance and an opportunity for him to prove he had reformed. The defendant wasted that opportunity and added even more victims to the long list of children victimized by his conduct. The defendant's prior conduct suggests he remains a danger, and a long sentence is necessary to protect the most vulnerable members of society.

D. The Need to Deter Similar Conduct

The sentence imposed must also adequately deter criminal conduct. *See* 18 U.S.C. 3553(a)(2)(B). This objective encompasses both specific deterrence, which aims to deter future criminal conduct by the defendant, *see United States v. Bannister*, 786 F. Supp. 2d 617, 661 (E.D.N.Y. 2011), and general deterrence, the need to "prevent criminal behavior by the

population at large." *See United States v. Davis*, 82 F.4th 190, 202 (2d Cir. 2023) (citation omitted).

Given the defendant's history of victimizing children, as discussed above, and his pattern of reoffending soon after his release from custody, specific deterrence requires the imposition of a substantial sentence. *See United States v. Garcia*, 528 F. App'x 57, 59 (2d Cir. 2013) (affirming an upward variance where the defendant had been engaged in criminality since he was a juvenile); *see also United States v. Denno*, 831 F. App'x 564, 566 (2d Cir. 2020) (summary order) (discussing the need for specific deterrence where defendant had a large volume of child pornography and an admitted attraction to minors); *United States v. Lawrence*, 254 F. Supp. 3d 441, 446 (E.D.N.Y. 2017) ("A prison sentence is partly intended to make a community safer and to remove the danger a defendant poses to the people around him . . . after release through specific deterrence."). The Court's sentence should send a message to the defendant that he must "give up crime." *See United States v. Murphy*, No. 24-404-cr, 2025 WL 428420, at *2 (2d Cir. Feb. 7, 2025) (citation omitted).

In terms of general deterrence, the sentence imposed should send a message to others that engaging in the exploitive, abusive conduct at issue here will have serious consequences. *See United States v. Hussain*, No. 19-CR-40 (PKC), 2023 WL 4529625, at *9 (S.D.N.Y. July 12, 2023) (explaining the need for general deterrence in a case involving the attempted inducement of a minor to engage in sexual activity). A lengthy sentence is necessary to dissuade others who may engage in similar conduct. The sentence should send a message that crimes which degrade and exploit others—especially minors—will not be tolerated.

V.  Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 360 months' imprisonment.

                      Respectfully submitted,

                      JOSEPH NOCELLA, JR.
                      United States Attorney

By:          /s/
                      Gilbert M. Rein
                      Assistant U.S. Attorney
                      (718) 254-6407

cc: Clerk of the Court (NRM) (by ECF)
     Nora Hirozawa, Esq., Defense Counsel (by ECF and Email)
     Erica T. Vest, United States Probation Officer (by Email)